UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

GEORGE DAVIS,

           Plaintiff,           Case No. 2:13-cv-362

v.                                            Honorable Gordon J. Quist

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

           Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without immediate payment of an initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff George Davis, a state prisoner currently confined at the Detroit Reentry Center, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that while he was confined at the Chippewa Correctional Facility (URF), Defendants in this action violated his Eighth Amendment right to receive necessary medical care. As Defendants, Plaintiff names the Michigan Department of Corrections (MDOC), MDOC Director Daniel Heyns, URF Warden Jeffrey Woods, Deputy Warden Connie Hurtun, Deputy Warden Thomas Mackie, Dr. Unknown Bartoski, Physician Assistant M. Milette, Penny Filion, R.N., Melissa LaPlaunt, R.N., Wendy Ball, R.N., Unknown Fisher, R.N., Theresa Merlings, R.N., Patricia Lamb, R.N., S. Laughhunn, R.N., Unknown Bonnee, R.N., Amy MacDowell, R.N., L. Nagorny, R.N., Samantha Belonga, R.N., Grievance Coordinator M. McLean, and Unknown Parties.

Plaintiff alleges that on March 18, 20, and 25, 2013, he complained that Defendants Woods, Hurtun and Unknown Nurses retaliated against him and conspired to deny him medical treatment, despite charging him a $5.00 co-pay. On March 29, 2013, Plaintiff complained to Defendant Murlin and other health care providers that he was in constant pain due to bullet fragments lodged in his skull. On April 8, 2013, Plaintiff's grievance number URF 13-04-1085-12-D was denied and it was noted in the grievance response that Plaintiff was loud and uncooperative. Plaintiff contends that the only evidence that he was loud and uncooperative were the statements made by Defendants. On April 22, 2013, Defendant McLean rejected Plaintiff's grievance number URF 13-04-1267-28-C pursuant to Policy Directive 03.02.130 because his grievance included more than one issue. Plaintiff asserts that all of the issues included in his grievance are directly related to the same incident. Plaintiff's step II appeal was denied by Defendant Woods. Plaintiff's step III appeal was also denied.

On April 14, 2013, Plaintiff filed grievance URF 13-04-1201-12-E-1, asserting that he was suffering from headaches due to bullet fragments lodged in his skull and that Defendants were refusing to provide treatment. On April 2013, in an unnamed, unsigned response to Plaintiff's grievance, Defendants Ball, LaPlaunt, Woods, Hurtun, Bartoski, Fisher, and Murlin refused to provide treatment and/or pain medications to Plaintiff. In addition, the response indicated that Plaintiff had declined an evaluation with the nurse, but there was no evidence to support that assertion. Plaintiff claims that the nurse refused to evaluate him and spoke to him in a humiliating manner. Plaintiff attempted to file separate grievances regarding the conduct, but Defendant McLean refused to process the request. Plaintiff's step II grievance appeal was denied by Defendant Lamb. Plaintiff's step III appeal was rejected as vague by Defendant Laughhunn.

On May 23, 2013, Plaintiff filed grievance number URF 13-05-5164-12-E-1, asserting that he had been denied adequate medical care for his headaches. Plaintiff claimed that he had told the nurse that he was being forced to trade his food for prescription pain medications and that she had refused to help him, and had merely terminated the visit. Plaintiff's grievance was denied at step I on May 30, 2013. Defendant Lamb denied Plaintiff's step II grievance appeal. On October 21, 2013, Defendant Laughhunn confirmed that Plaintiff was consuming other inmates medications, but stated that Plaintiff's concerns had been appropriately addressed by the step I and II responses. Plaintiff concedes that he is allowed to purchase over-the-counter pain medications, but that these medications are not sufficient to relieve his pain. Moreover, Plaintiff states that he is often indigent and cannot purchase medications if he does not have sufficient funds.

**Discussion**

    I.        <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, No. 13-5315, slip op. at 4-5 (6th Cir. Apr. 4, 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

In this case, Plaintiff claims that Defendants violated his rights when they refused to provide him with prescription pain medication as treatment for his headaches. Plaintiff fails to allege any specific facts regarding the history of his condition and treatment. Plaintiff merely asserts that he suffers from headaches as a result of bullet fragments and that he requires prescription strength pain medication. According to the step I response to grievance number URF 13-04-1085-12-D1, which is dated April 8, 2013:

> The patient's primary complaint is that on March 18, 2013 and March 26, 2013 his complaints of pain were not addressed.
>
> Investigation of the patient's complaint and the patient's electronic medical record shows that during the transfer intake on March 18, 2013 the patient did complain of pain. Documentation shows that he was loud and uncooperative with the nurses attempt to address his

> issues and therefore no evaluation was completed. The patient was evaluated by the medical provider on March 26, 2013 for complaints of headaches. The patient told the medical provider the [sic] he had been taking pain medications from other inmates. The patient was educated on the dangers of taking other patients [sic] medications. The medical provider advised the patient that he should follow the recommendation [sic] treatment plan of the pain management committee. Disagreement with the recommended treatment plan does not support the patient's allegations of denial of treatment.
>
> Chippewa Correctional facility health care is adequately prepared to meet the patient's health care needs. The patient has been advised to follow the recommendations of care and request follow up care as necessary.

*See* docket #1-1, p. 18 of 40.

Plaintiff also attaches a copy of the May 6, 2013, step II response to grievance number 13-04-1085-12-D1 to his complaint. This response states:

> Grievant claims that he has been denied adequate treatment for pain and that all staff "worked together in concert to racially deprive me of fair medical treatment." Grievant claims "their intentions are to inflict pain upon my (Black African American) person." Grievant asserts that he needs to see a specialist.
>
> Investigation determined that grievant's issue was appropriately addressed by the Step I Respondent and is affirmed at the Step II Appeal. Review of the electronic medical record reveals that grievant has been evaluated on multiple occasions related to this issue and related to grievant's insistence on receiving Ultram and / or Neurontin. It is noted that Ultram was discontinued upon the recommendation of the Pain Management Committee. There is no record that Neurontin was ever prescribed for grievant. An alternate treatment plan is in place as deemed appropriate by the medical providers.
>
> While grievant's concern re: his symptoms is acknowledged, grievant is reminded that a disagreement with the plan of care does not constitute a denial of treatment. Grievant is assured that those interventions deemed medically necessary will be ordered. Grievant is encouraged to follow the plan of care as instructed.

>Grievant's claims of denial of care and discrimination are not supported.
>
>Grievant is encouraged to submit a CHJ-549 Health Care Request for evaluation should any adverse symptoms persist or worsen.

*See* docket #1-1, p. 23 of 40.

>According to the step I response to grievance number URF 13-05-1646-12-E1:
>
>The patient's primary complaint is he was denied treatment for head, throat and neck pain on May 16, 2013. He states that nurse was unprofessional in conduct during the visit.
>
>Investigation of the patient's primary complaint and the patient's electronic medical record indicates the patient was evaluated for the above complaints by the nurse on May 16, 2013. The patient indicated he was exchanging food for other inmates' pain medication because he has been denied pain medication from health care. The patient was advised to purchase over the counter medications from the store and has saline spray ordered for chronic sinus symptoms. The visit was terminated by the nurse prior to any further assessment due to the patient becoming agitated.

*See* docket #1-1, p. 26 of 40. This response was affirmed at step II. *Id.* at p. 27 of 40. In the step III response, Defendant Laughhunn stated:

>All relevant information within the electronic medical record has been reviewed. Step I and Step II appropriately addressed this grievance and are affirmed at the Step III appeal. Grievant is also educated, consuming medication ordered for other inmates is inappropriate and considered contraband. Grievant is encouraged to seek over the counter medication though [sic] his prisoner store or seek evaluation and treatment through his health care clinic. Disagreement with the treatment plan provided does not constitute a denial of care.

*Id.* at p. 28 of 40.

Plaintiff also attaches a copy of the June 13, 2013, step I response to grievance number URF 13-06-1782-12-D3, which addressed Plaintiff's complaint that he had been denied a

referral to the Pain Management Committee and had been denied Ultram for pain relief. The grievance respondent stated:

> Investigation of the patient's complaint and the patient's electronic medical record indicates the patient was evaluated by the medical provider on June 11, 2013 for head/neck pain and chronic care. The medical provider did not find a medical indication for Ultram to be prescribed. The patient continues to be a poor candidate for the use of non-formulary pain medications. The medical provider followed the Pain Management Committee recommendations from February 14, 2013. The recommendations included Ultram to be discontinued as the patient has been found diverting Ultram on more than one occasion in the past. The patient was recommended to purchase medications from the store if desired.

*Id.* at p. 32 of 40.

On July 8, 2013, Defendant Lamb noted in the step II response that Plaintiff had already been referred to the Pain Management Committee, and that his case had most recently been reviewed on February 13, 2013. Defendant Lamb stated that there was no current indication to repeat the referral. *Id.* at p. 35 of 40. In the October 28, 2013, step III response, Defendant Laughhunn stated:

> Grievant alleges his request for evaluation by the Pain Management Committee has been inappropriately denied.
>
> All relevant information within the electronic medical record has been reviewed. The Pain Management Committee (PMC) is a resource available to the Medical Providers to further assist in determining appropriate treatment plans for prisoners. The PMC is not a resource available to the prisoners and they cannot initiate or request PMC review. The Medical Provider is the medical authority and is responsible to manage the treatment plan of the patient. Disagreement with the treatment plan does not constitute a denial of care.

*Id.* at p. 34 of 40.

A review of the pleadings in this case clearly shows that Plaintiff's condition has been evaluated by medical personnel and that he continues to be monitored by such personnel. Plaintiff was previously prescribed Ultram for pain, but it was discontinued after he had been found diverting it on more than one occasion. Plaintiff's condition was reviewed by the Pain Management Committee, who determined that Plaintiff's condition did not warrant prescription pain medication. It is clear from the record that Defendants gave Plaintiff's requests for Ultram and Neurontin due consideration and concluded that Plaintiff should not be prescribed these medications at that time. Such facts do not support a finding that Defendants were deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

Plaintiff also makes a conclusory assertion that Defendants retaliated against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff fails to allege what protected conduct he was engaging in that motivated Defendants to want to retaliate against him. Nor does Plaintiff allege any facts showing that Plaintiff's conduct was the result of any improper retaliatory intent. Therefore, Plaintiff's retaliation claims are properly dismissed.

Finally, the Court notes that Defendants Heyns, Woods, Hurtun, Mackie, and McLean were not involved in the denial of Plaintiff's requests for prescription pain medication and that their only roles in this action involve the denial of administrative grievances or the failure to act. Defendants Heyns, Woods, Hurtun, Mackie, and McLean cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000).

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: September 5, 2014              /s/ Gordon J. Quist
                                      GORDON J. QUIST
                                      UNITED STATES DISTRICT JUDGE